UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL E. VAUGHN

                Plaintiff,        Civil Action No. 14-10458
                                     Honorable Matthew F. Leitman
                                     Magistrate Judge David R. Grand

    v.

OFFICE OF THE JUDGE FOR
THE THIRD CIRCUIT COURT, WAYNE
COUNTY PROSECUTOR'S OFFICE FOR
THE CITY OF DETROIT, MICHIGAN, KIM
L. WORTHY, PROSECUTING ATTORNEY,
DETROIT POLICE DEPARTMENT FOR THE
CITY OF DETROIT, MICHIGAN, and JAMES
CRAIG, CHIEF OF POLICE,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTIONS TO DISMISS [11, 17, 19]**

**I.     RECOMMENDATION**

Plaintiff Michael Vaughn, a prisoner proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983. Before the Court are three motions to dismiss filed by the five defendants in this action, the "Office of the Judge for the Third Circuit Court"[1] [11], the City of Detroit and its Chief of Police, James Craig [17], and the Wayne County Prosecutor's Office and its Prosecutor, Kym L. Worthy[2] [19]. These motions have been referred to this Court for a

---

[1] As noted in this defendant's motion, Vaughn's claims against "Office of the Judge for the Third Circuit" are presumably made against Third Circuit Court Judge Ulysses W. Boykin, as he issued the ruling at the heart of Vaughn's complaint. Accordingly, the Court will address these claims as if they are directed against Judge Boykin.

[2] Vaughn's complaint and filings mistakenly spell the prosecutor's name as "Kim" instead of

Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A). The Court, finding that the matter can be decided on the briefs alone, disposes of the requirement for a hearing pursuant to Local Rule 7.1(f)(2). For the following reasons, the Court RECOMMENDS that the defendants' motions [11, 17, 19] be GRANTED.

## II.  REPORT

### A.  Background

In 1992, Vaughn was tried by jury in the Third Judicial Circuit Court of Michigan and convicted on four counts of first-degree criminal sexual conduct and one count of armed robbery. He was sentenced to four concurrent prison terms of 30-50 years for the criminal sexual conduct and one term of 10-30 years for the armed robbery conviction. [1 ¶8; 1 at 32; 11-2 (Register of Actions related to Vaughn's criminal case); 11-3 (Opinion[3] of the Wayne County Circuit Court)].[4] Vaughn appealed his convictions, which were affirmed on August 22, 1994. [11-2; 11-3]. He filed motions for relief from the judgment in 1996, 1997 and 2008, all of which were denied. *Id.*

Vaughn then filed a petition in Wayne County Circuit Court for an order to have DNA testing performed on certain biological material, pursuant to M.C.L. § 770.16.[5] *Id.* That matter

---

"Kym," and that mistake has carried over to the caption of this case.

[3] The opinion attached to Judge Boykin's motion is unsigned. [11-3]. However, Vaughn appears to have provided Judge Boykin's signed order accompanying that opinion [1 at 32], and Vaughn does not contend that the opinion provided by Judge Boykin is not the one he actually issued.

[4] A court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

[5] MCL 770.16 permits a defendant who is incarcerated pursuant to a felony trial conviction prior

was assigned to Judge Boykin. *Id.* Vaughn specifically sought to test the victim's clothes (which allegedly contained blood and semen samples) and the rape kit collected at the hospital. *Id.* Vaughn alleges that these items were previously tested and that neither the existence of the samples, nor the alleged test results were disclosed to him, or his counsel, at the time of trial.[6] On March 6, 2013, Judge Boykin denied his request, finding that in Vaughn's 2008 motion for relief from judgment he had admitted that the blood and semen samples had already been destroyed. *Id.* Thus, Judge Boykin found that Vaughn had failed to show by clear and convincing evidence the present existence of the biological material. *Id.*[7] *See also* MCL 770.16(4)(b)(i).

On January 30, 2014, Vaughn filed his instant complaint in this Court, claiming due process violations, actual innocence, cruel and unusual punishment, clemency and pardon, violation of the Confrontation Clause, and violation of his right to access to the courts, all centered on Judge Boykin's denial of his request for DNA testing and the Defendants' alleged denial of his access to the biological samples. [1]. Defendants move to dismiss on numerous grounds, including that Vaughn's claims are barred by a variety of doctrines, including *Heck v. Humphry*, *Rooker-Feldman*, and *res judicata*/collateral estoppel.

---

to January 8, 2001, to petition the state circuit court to order DNA testing of biological material identified during the investigation leading to his conviction. In pertinent part, the statute provides that the circuit court "shall order DNA testing if the defendant…[establishes by clear and convincing evidence that] a sample of identified biological material [] is available for DNA testing…" *See* MCL 770.16(1), (4)(b)(i).

[6] Vaughn was convicted on the basis of victim identification, not DNA evidence. *Id.*

[7] Exhibits C and D to defendants Craig and the City of Detroit's motion purport to be evidence tags showing that evidence related to the incident in question (a "rape kit" and an article of the victim's clothing) were destroyed more than a decade ago. [17-4, 17-5]. Importantly, Vaughn does not contest that this evidence was destroyed and is no longer in existence.

**B.     Legal Standard**

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (*citing Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements.  *Iqbal*, 129 S.Ct. at 1949.  *See also*, *Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009).  Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading."  *Clark v.*

4

*Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

**C.     Analysis**

### i.     *The Heck and Rooker-Feldman Doctrines Mandate Dismissal of Some, But Not All, of Vaughn's Claims*

Vaughn claims a violation of his due process rights based on his inability to have access to DNA evidence collected in his criminal case, the testing of which he claims could lead to his exoneration. The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the prisoner first shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of habeas corpus…" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Having made none of those showings here, to the extent Vaughn's claims directly challenge his conviction (*e.g.,* his actual innocence claim) or the fact of his imprisonment as a result of his conviction (cruel and unusual punishment and pardon/clemency

5

claims), they are barred by *Heck* and should be dismissed.[8]

However, in *Skinner v. Lynn*, 131 S. Ct. 1289 (2011), the Supreme Court made clear that *Heck* does not bar a state prisoner's due-process challenge to a state's denial of DNA evidence testing. More specifically, the Court held that "a post-conviction claim for DNA testing is properly pursued in a § 1983 action." *Skinner*, 131 S.Ct. at 1293. Under *Heck*, § 1983 is unavailable as a remedy only where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Conversely, "if ... the plaintiff's action, even if successful, will not demonstrate the invalidity of [his conviction or sentence], the [§ 1983] action should be allowed to proceed...." *Id.* Because DNA testing "may prove exculpatory, inculpatory, or inconclusive," Vaughn's claims challenging the denial of such testing fit the latter category of cases and are not barred by *Heck*. *Skinner*, 131 S.Ct. at 1293.

Nor are those particular claims barred by the *Rooker-Feldman* doctrine.[9] That doctrine merely holds that a federal district court lacks subject matter jurisdiction over a claim that seeks reversal of an adverse state court judgment. *Id.* at 1297-98. The Supreme Court has made clear that where "a federal plaintiff 'present[s][an] independent claim,'" it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court."). *Id.* at 1297 (citations omitted). Defendants' arguments to the contrary are, therefore, unavailing.

---

[8] The Court also notes that the proper vehicle for a convicted person to bring an actual innocence claim is habeas, which, if viable, entitles him to discovery upon a showing of "good cause." *Dist. Atty's Office v. Osborne*, 557 U.S. 52, 68-69 (2009) (citing 28 U.S.C. § 2254 Rule 6). Since such claims do not belong as part of Vaughn's instant § 1983 action, they should be dismissed.

[9] To the extent Vaughn is asking this Court to reverse Judge Boykin's decision denying his motion for DNA testing, the *Rooker-Feldman* doctrine clearly would apply, and any such claim should be dismissed.

6

### *i.  Vaughn's Remaining Claims Should be Dismissed*

While the majority of Vaughn's claims are cognizable under § 1983, his complaint nevertheless fails to state a claim upon which relief can be granted, and should be dismissed. Vaughn's complaint has an overarching flaw – it fails to recognize that

> [a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man.  At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt.  But '[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears.'  'Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.'

*Osborne*, 557 U.S. at 68-69 (internal citations omitted).

Vaughn has been convicted, which means "[t]he State [] has more flexibility in deciding what procedures are needed in the context of postconviction relief.  '[W]hen a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume.'" *Id.* at 69.  Thus, Vaughn's "right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief." *Id.*  *Osborne* makes clear that: (1) plaintiffs like Vaughn have no "freestanding right to access DNA evidence in the post-conviction setting"; and (2) the state has no "constitutional obligation to preserve forensic evidence that might later be tested." *Id.* at 72-74.  Vaughn's claims premised on assertions to the contrary should be dismissed.

The only cognizable question raised by Vaughn's complaint, therefore, is "is whether consideration of [his] claim within the framework of [Michigan's] procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental

7

fairness in operation.'" *Id.* (citations omitted).[10] But Vaughn has failed to allege that M.C.L. § 770.16 is fundamentally unfair, making his action ripe for dismissal.

Vaughn's case is remarkably similar to a fairly recent Western District of Michigan case, *Franklin v. County of Kalamazoo*, No. 1:11-cv-36, 2011 WL 1042321 (W.D. Mich., Mar. 18, 2011), in which the plaintiff's claims were dismissed. In *Franklin*, the plaintiff had been convicted in state court of first-degree criminal sexual conduct, and was sentenced to a lengthy term of incarceration in 1994. In a post-conviction state court proceeding, Franklin, pursuant to M.C.L. § 770.16, sought DNA testing of evidence that he contended would prove his innocence. The state court denied that motion, in part based on its finding that the DNA evidence Franklin sought to test had been destroyed. *Franklin*, at *1. Franklin then filed a federal court § 1983 action, in which he raised many of the same types of claims that Vaughn raises, such as that the denial of DNA evidence "deprived him of his right to due process because it prevented him from [fully supporting] his application for commutation of sentence," and that the defendants had a constitutional obligation to preserve the DNA evidence.

The district court dismissed Franklin's complaint on the grounds that it failed to state a claim for relief, explaining:

> To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws …. To the extent that Plaintiff claims that Defendants denied him a fair commutation review in violation of his due process rights, he fails to state a claim…To establish a procedural due process violation, a petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.

---

[10] Therefore, to the extent Vaughn's complaint is construed as directly challenging the state's conduct in prosecuting his underlying criminal action, that claim may not be brought *as a Section 1983 challenge*, and should be dismissed. As the *Osborne* Court noted, a post-conviction case like Vaughn's does not implicate the Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 that due process requires a prosecutor to disclose material exculpatory evidence to the defendant *before trial*. *Osborne*, 557 U.S. at 68.

8

*Id.* at *2-3.

The court found that Franklin's claim that he had been denied "a fair commutation review" due to the evidence's destruction failed because "he has no liberty interest in the commutation of his sentence." *Id.* at *3. Similarly, because "[c]lemency proceedings ordinarily are left to the discretion of the executive," the court found that the DNA evidence's destruction did not violate Franklin's protected liberty interests. *Id.* at 3-4.

The court also found that Franklin's claimed "due-process right to access DNA evidence for use in the commutation hearing also fails to state a claim. The Supreme Court has recognized that the federal constitution does not provide a broad, freestanding right to access DNA evidence in the post-conviction setting." *Id.* at *4 (citing *Osborne*, 557 U.S. at 55-56); *see also, Osborne*, at 72 (expressly refusing to recognize "a freestanding right to DNA evidence untethered from [an independent] liberty interest…)). Rather, a convicted person may successfully challenge a state's post-conviction relief procedures, like M.C.L. § 770.16, "only if they are fundamentally inadequate to vindicate the substantive right involved." *Id.* As the *Franklin* court found, because the procedural protections under the Michigan statute, *see supra* fn. 5, "are comparable to those established in the federal statute, 18 U.S.C. § 3600, which the Supreme Court has cited with approval," "nothing about the Michigan procedure is inadequate to vindicate the interest involved." *Id.* at 4-5.

The *Franklin* court also noted, "where, as here, the evidence is now unavailable, it is difficult to imagine how Plaintiff can obtain the injunctive relief he seeks." *Id.* at 5. To that end, the court noted that the issue of DNA evidence's existence had been adjudicated against Franklin in the state court, which meant that Franklin's claim was barred by *res judicata*. *Id.*

Vaughn's claims are similar, both substantively and procedurally, to the ones at issue in

9

*Franklin*. Construing his complaint liberally, Vaughn asserts both pre-trial and post-trial due process claims, arguing that he was, and continues to be, prevented from using the DNA test results to prove his actual innocence, and to support any clemency/pardon petitions he may submit or be considered for. He further alleges that his continued incarceration due to the deprivation of his ability to access the DNA evidence violates the cruel and unusual punishment clause of the Eighth Amendment, and violates his rights to access to the courts. Vaughn asserts that he is not challenging any decision to deny his petition to receive such evidence in his case[11], but instead is challenging "the customs, policies, practices, defendants authoritatively construed denying him access to collected evidence for DNA testing in a prompt manner in violation of due process and equal protection of the law." [1 at ¶2].[12]

As discussed above, Vaughn's § 1983 complaint is not the proper venue for directly challenging the conduct of his criminal trial, and he cannot state a claim on the ground that he presently has a general substantive due process right to receive DNA evidence. All that can remain is a challenge to M.C.L. § 770.16's fundamental fairness or its application to Vaughn. But such claims lack merit for a variety of reasons.

Vaughn's complaint contains no allegations that M.C.L. § 770.16, is "fundamentally inadequate to vindicate" his substantive rights. *Franklin*, *supra* at *4-5. That pleading failure

---

[11] This assertion is odd considering Vaughn's naming of the Office of the Judge for the Third Circuit as a defendant in this matter, and attaching a copy of Judge Boykin's order as an exhibit to his papers. Similarly, despite suing Prosecutor Worthy in both her individual and official capacities [1 at ¶ 11], Vaughn asserts that he "does not challenge the Prosecutor's conduct or the Court decisions; instead he challenges Michigan's rules, 'as authoritatively construed by the State,' and those acting in their official capacity that violated clearly established law." [23 at 11]. At any rate, the Court construes Vaughn's complaint liberally as discussed herein.

[12] Despite alleging in this paragraph an equal protection claim, Vaughn does not set forth any elements of an equal protection claim, nor does he cite an equal protection violation as grounds for the relief he seeks. [*See generally* 1].

10

cannot be cured because the Michigan statute reasonably balances the competing interests of the convicted person's right to pursue DNA evidence and testing with the state's right to maintain an orderly criminal justice system. *See Franklin,* 2011 WL 1042321, at *5 ("nothing about the Michigan procedure is inadequate to vindicate the interest involved. The statute provides significant procedural protections to a convicted person who seeks access to DNA evidence. The procedural protections under the Michigan statute are comparable to those established in the federal statute, 18 U.S.C. § 3600, which the Supreme Court has cited with approval. Nothing in the Michigan procedure is inconsistent with a recognized principal of fundamental liberty. As a consequence, Plaintiff's procedural due process challenge to the denial of access to DNA evidence is without merit.") (internal citations omitted); *see also Osborne*, 557 U.S. at 62 ("The availability of technologies not available at trial cannot mean that every criminal conviction, or even every criminal conviction involving biological evidence, is suddenly in doubt. The dilemma is how to harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice."). Accordingly, any claim by Vaughn challenging M.C.L. § 770.16 should be dismissed.

Procedural similarities between Vaughn's case and *Franklin* also compel its dismissal. The principal relief Vaughn seeks is an order releasing the DNA evidence for testing, as well as the release of any results of tests already conducted. [1 at 11]. However, as in *Franklin*, a judicial finding has been made that the DNA evidence does not exist, and that Vaughn, at a minimum, failed to show the evidence's existence by "clear and convincing" evidence as required under M.C.L. § 770.16. This is important for two reasons. First, "where, as here, the evidence is now unavailable, it is difficult to imagine how [Vaughn] can obtain the injunctive relief he seeks." *Franklin*, *supra* at *5. Second, these circumstances compel the application of

11

the doctrines of *res judicata* and collateral estoppel, which bar Vaughn's claims and the relief he seeks.

As the *Skinner* Court noted, "'[w]hen there is a parallel state and federal litigation,' state preclusion law may become decisive…" *Skinner*, 131 S.Ct. at 1298 n. 10 (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292-93 (2005)). Here, Vaughn's filings make clear (despite his protestations to the contrary) that he is challenging Judge Boykin's finding that the DNA evidence is unavailable, as he argues that finding was erroneous in light of a City of Detroit form letter which discusses the possibility of "re-testing."[13] [23 at ¶¶ 14-18]. Because this aspect of Vaughn's complaint specifically challenges a state court decision on the merits of his petition, and because Judge Boykin expressly found that the DNA samples had been destroyed long ago, such claim in this Court is barred by the doctrine of *res judicata*. [11-3 at 5-6].

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering states." *Abbott v. Michigan*, 474 f.3d 324, 330 (6th Cir. 2007); *Migran v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 80-82 (1984) (citing the Full Faith and Credit statute, 28 U.S.C. § 1738). "Michigan has adopted a broad application of the doctrine of *res judicata*, which bars not only claims actually litigated in the prior action, but all

---

[13] The letter in question, dated March 3, 2011, appears to be a form letter from the Wayne County Prosecutor's Office that is used in response to requests for DNA evidence. It specifically states:

> We received your requests for re-testing of Detroit Police Forensics Laboratory results in the aforementioned matter. This is a request for re-testing that falls outside the parameters of our initial review. We will agree to re-test outside of the established parameters in "compelling cases." The Wayne County Prosecutor's Office Conviction Integrity Unit has carefully reviewed this request and we respectfully decline the request for re-testing at this time. [1 at 30].

claims arising out of the same transaction that the parties, exercising reasonable diligence, could have raised in the prior action but did not." *Berkshire v. Klimowicz*, No. 13-11599, 2014 WL 1032048, at *6 (E.D. Mich., Mar. 17, 2014). More specifically, the doctrine bars a second, subsequent action where "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved on the first."). *Adair v. State*, 470 Mich. 105, 680 N.W.2d 386, 396 (Mich. 2004).

All three prongs are met here.[14] The state court applied the Michigan statute and issued a decision on the merits of Vaughn's petition. [11-3]. The state-court action, which Vaughn initiated, involved the same parties or privies. Further, the state court expressly found that the DNA evidence in question was no longer available. [*Id.* at 5-6]. As a result, Vaughn is barred from re-litigating the issue of the evidence's availability in this action.[15] *Franklin*, 2011 WL

---

[14] The four prongs of the related collateral estoppel doctrine, which "precludes relitigation of an issue in a subsequent, different cause of action between the same parties or their privies when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding," – (1) there is identity of parties across the proceedings, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated and necessarily determined in the first proceeding, and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding" – are also met for the same reasons discussed below. *Berkshire*, 2014 WL 1032048, at *8.

[15] Moreover, the "evidence" which Vaughn cites as "undeniably" establishing the existence of test results from the DNA evidence is far from conclusive. As noted above, it is a form letter presumably sent in response to Vaughn's original petition seeking access to the DNA evidence. [1 at 30]. The letter specifically states "We received your requests for *re-testing* . . . This is a request for *re-testing* for a case that falls outside the parameters or our initial review. We will agree to re-test outside of the established parameters in 'compelling cases.'" *Id.* Nothing in this letter is conclusive, or even favorable evidence, demonstrating the actual existence of DNA samples or previous testing or results, as Vaughn suggests. The simple use of the word "re-test" appears only to be formalistic, as evidenced by the fact that Vaughn's petition could not have been seeking to "re-test" anything, as he had not believed at the time of his petition that anything had been tested to begin with. His reliance on the phrase "We will agree to re-test" is similarly unavailing, as that phrase is not connected in any way to the specific evidence of his case, but to the general parameters in which the Office will agree to retest DNA evidence. Finally, this letter, dated over two years prior to the Third Circuit Court's decision, was available to Vaughn

13

1042321, at *5 ("to the extent that Plaintiff intends to challenge the state-court's finding that the DNA evidence is unavailable, his challenge clearly is barred by the doctrine of res judicata. The state court expressly found that no DNA sample was available for testing."). For these reasons, Vaughn's claims against Defendants should be dismissed.[16]

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants the Office of the Judge for the Third Circuit Court, James Craig and the City of Detroit, and Kym Worthy and the Wayne County Prosecutor's Office's motions to dismiss Vaughn's complaint **[11, 17, 19]**, be **GRANTED**, and that Vaughn's complaint be dismissed, with prejudice.

Dated: December 18, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*,

---

at that time, and thus he could have argued this alleged "cover-up" at that time, resulting in the claim being similarly barred by claim preclusion. *Adair*, 680 N.W.2d at 396.

[16] The Court also notes the recent decision of Eastern District of Michigan case of *Browning v. Worthy*, No. 13-10257, 2014 WL 4064808, at *3 (E.D. Mich., Aug. 18, 2014), which held that federal district courts lack jurisdiction to grant the form of injunctive relief Vaughn seeks because, "according to the unambiguous language of the [Michigan] statute [governing petitions for DNA evidence], [they have] no authority to order Defendant or anyone else to produce and test [the evidence]; that authority is vested exclusively with the court in which Plaintiff was sentenced."

638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager

Dated: December 18, 2014